**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JUSTIN P. NANCE,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Case No: 1:23-cv-01869-JMC |
| **CLERK OF THE CIRCUIT COURT FOR BALTIMORE CITY,** | | |
| | * | |
| *Defendant.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

On July 11, 2023, Plaintiff, Justin P. Nance, filed his Complaint (ECF No. 1) alleging that Defendant, the Clerk of the Circuit Court for Baltimore City, violated Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, by (1) failing to provide reasonable accommodation(s) to Plaintiff (Count I); interfering with Plaintiff's accommodation(s) (Count II); discriminating against Plaintiff (Count III); and retaliating against Plaintiff (Count IV). Plaintiff further alleges that Defendant retaliated against Plaintiff in violation of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Presently pending before the Court are two motions: (1) Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 16); and (2) Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint (ECF No. 26). The Court finds that no hearing is necessary pursuant to Local Rule 105.6 (D. Md. 2023) after considering the parties' motions, oppositions, and replies thereto. (ECF Nos. 24, 29, 30, 33). For the reasons that follow, Defendant's Motion to Dismiss will be granted and Plaintiff's Motion to Amend will be denied.

## I.   BACKGROUND

Defendant employed Plaintiff as a courtroom clerk for the Baltimore City Circuit Court from January 18, 2017, to January 24, 2020.  (ECF No. 1 at 2).[1] Prior to Plaintiff's employment as a courtroom clerk, he was diagnosed with post-traumatic stress disorder ("PTSD") and "other mental health conditions" in or around 2003 for which Plaintiff is a qualified individual with a disability under the ADA.  *Id.* at 3–4.  "Courtroom clerks perform a series of clerical tasks within and outside of a courtroom.  They may be assigned to assist a judge with a docket overseeing civil, criminal, juvenile or family matters that may come before the court."  *Id.* at 3.  Plaintiff was first supervised by Obiora Dallah, and Arthur Kelly was Plaintiff's "second line supervisor" at all times relevant to Plaintiff's claims.  *Id.*  Kelly reported to the Assistant Chief Deputy Clerk.  *Id.*  Clerk supervisors, supervisor assistants, and the Assistant Chief Deputy Clerk have the authority to assign clerks to specific judges, dockets, trials, or other matters.  *Id.*

Although civil cases and criminal cases have similar functions required of courtroom clerks, civil cases and criminal cases also have separate functions required of courtroom clerks that do not necessarily overlap with one another.  *Id.*  Plaintiff was initially trained in courtrooms overseeing civil matters.  *Id.*  But on or around October 2017, the Clerk of the Court—Marilyn Bentley—instructed Plaintiff to begin training in criminal cases.  *Id.* at 4.  Plaintiff informed his then-supervisor Dallah before his first day of criminal training that he suffered from PTSD and required an accommodation.  Namely, Plaintiff could not be assigned to criminal cases because of

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.  At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff."  *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).  The Court notes that Plaintiff provides inconsistent dates as to when exactly Plaintiff was terminated.  *Compare* (ECF No. 1 at ¶ 10), *with* (ECF No. 1 at ¶ 56).

the risk that handling criminal matters could trigger a PTSD response.  *Id.*  "Dallah denied the request and instructed [Plaintiff] to proceed with criminal training."  *Id.*

Glendora Gray trained Plaintiff on handling criminal cases.  *Id.*  Gray observed Plaintiff having issues during a criminal matter while being trained and informed both Kelly and Dallah of the same.  *Id.*[2]  Plaintiff then again informed Dallah, Kelly, "and other supervisors"—at an unspecified time—that Plaintiff suffered from PTSD, was on medication for his condition, and that his condition was exacerbated by participating in criminal proceedings before again requesting that Dallah refrain from assigning Plaintiff to criminal matters.  *Id.*  Dallah denied the request once more.  *Id.*

Plaintiff then met with Sandra Murphy of Defendant's human resources department—also at an unspecified time—to request that he be absolved from clerking criminal proceedings, but "Murphy did not respond."  *Id.*  Plaintiff also met with Bentley to request that Plaintiff be absolved from clerking criminal proceedings with no avail.  *Id.*  Then on December 5, 2017, Defendant approved Plaintiff's request for intermittent leave related to his PTSD and other mental health disabilities, "covering the period of November 27, 2017, through November 28, 2018."  *Id.*  As part of the certification process for that request, Plaintiff's mental health provider informed Defendant that Plaintiff suffered from chronic mental health conditions, including PTSD, "which cause episodic flare-ups periodically preventing him from performing his job functions."  *Id.* at 5.

On October 23, 2018, Plaintiff submitted a written religious accommodation request to Defendant.  *Id.*  The next day on October 24, 2018, Dallah assigned Plaintiff to observe criminal court before Judge Peters.  *Id.*  Plaintiff immediately requested to be removed from that assignment, but Dallah denied Plaintiff's request for the third time.  *Id.*  Shortly thereafter, Plaintiff

---

[2] Plaintiff does not specify when this occurred or what issues Plaintiff had during this particular training session.

"experienced a PTSD episode causing a disruption in the proceeding" while observing Judge Peters' criminal matters. *Id.* Plaintiff then provided Judge Peters with a written letter on or about October 30, 2018, explaining his mental health disabilities that caused the PTSD episode, but also alleging therein that Defendant was subjecting Plaintiff to religious discrimination and denying him a religious accommodation. The letter was followed by a second written religious accommodation request to Defendant on October 31, 2018. *Id.*

Defendant eventually provided Plaintiff with an accommodation for his disability by assigning Plaintiff to a special project and only to non-criminal proceedings, but Plaintiff does not specify when this accommodation occurred. *Id.* at 6. Then on February 11, 2019, Plaintiff "complained about sexual harassment against Wilson." *Id.*[3] Plaintiff followed this complaint up with a "formal Fair Practices complaint alleging sexual harassment against Wilson" on February 13, 2019, before submitting "an updated certification for FMLA and subsequently receiv[ing] an approval" for his leave request on February 19, 2019. *Id.* Wilson then issued Plaintiff an employee evaluation rating his performance lower than previously on March 14, 2019, concerning Plaintiff's inability to work on criminal proceedings. *Id.* That same day, Plaintiff sent a written complaint concerning his evaluation to "a Fair Practices Officer and his supervisors including Bentley, Murphy, Dallah, and Kelly, specifically alleging Defendant was continuing to subject him to discrimination, retaliation, a hostile work environment, and causing his medical conditions to worsen." *Id.* Plaintiff alleges that he similarly complained of discrimination, harassment, and retaliation to the "Fair Practices Department" from February 13, 2019, through May 31, 2019. *Id.*

---

[3] Plaintiff provides no details whatsoever in his Complaint as to who "Wilson" is or the facts underlying Plaintiff's complaint.

On March 25, 2019, Plaintiff was placed on administrative leave "pending an investigation into a non-work related peace order hearing that occurred in January 2019." *Id.* Plaintiff previously informed Defendant of this hearing, but nevertheless complained to Murphy on June 10, 2019, that he feared reprisal upon his return to work following the administrative leave. *Id.* at 6–7. Plaintiff then returned to work on June 12, 2019, "in a training status" alongside also "complain[ing] about discrimination by Dallah" in June 2019. *Id.* at 7.[4] Several months later on September 17, 2019, Defendant—at Dallah's direction—ordered Plaintiff to observe a criminal trial for training purposes. *Id.* Plaintiff suffered a PTSD episode during that criminal trial which resulted in Plaintiff being removed from the courtroom and ultimately being placed on administrative leave that same day. *Id.* Plaintiff then filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 7, 2019, before Defendant discharged him on January 24, 2020. *Id.*

## II.   LEGAL STANDARD

### A.   Motion to Dismiss or, in the Alternative, for Summary Judgment

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic*

---

[4] Plaintiff provides no specifics regarding the nature of the alleged discrimination or when it occurred.

*Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted).  In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted).  The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage . . . ." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (internal citation omitted).  However, "the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).  "A document is 'integral' to the complaint if its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Reamer*, 556 F. Supp. 3d at 59 (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).  Moreover, "In employment discrimination cases" such as this one, "courts often take judicial notice of EEOC charges and EEOC decisions" without converting a motion to dismiss into one for summary judgment.  *Yampierre v. Balt. Police Dep't*, No. ELH-21-12-9, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (citing *Campbell v. Mayorkas*, No. 3:20-cv-697-MOC-DSC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)).

Defendant styles its Motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020).  The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Id.* at 626 (citation omitted).  "Ordinarily, summary judgment is inappropriate where the parties have not had an opportunity for reasonable discovery." *Id.*

Here, the Court will exercise its discretion by treating the Motion as one to dismiss under Fed. R. Civ. P. 12(b)(6) and limit its review to the instant pleadings while taking "judicial notice of [Plaintiff's] EEOC charges and EEOC decisions."  *Yampierre*, 2022 WL 3577268 at *17; *see also Bowie v. Univ. of Md. Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint."); *Stennis v. Bowie State Univ.*, 236 F. Supp. 3d 903, 907 n.1 (D. Md. 2017), *aff'd in part, vacated in part on other grounds*, 716 F. App'x 164 (4th Cir. 2017) (noting that "the EEOC charge and its related documents are integral to the Complaint . . . .").

B.  <u>Motion to Amend</u>

Pursuant to Fed. R. Civ. P. 15(a)(2), when a party's timeframe for amending its pleading as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." "Under Rule 15(a), the district court 'has broad discretion concerning motions to amend pleadings

. . . .'" *Macsherry v. Sparrows Point, LLC*, No. ELH-15-22, 2016 WL 8669914, at *8 (D. Md. Oct. 28, 2016) (quoting *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam)) (internal citation omitted).  The Supreme Court of the United States has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) ("Leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.").

Regarding futility, "[t]here is no question, to be sure, that leave to amend would be futile when an amended complaint could not survive a Rule 12(b)(6) motion."  *Morgan v. Coppin State Univ.*, No. SAG-20-0427, 2020 WL 6485083, at *2 (D. Md. Nov. 4, 2020) (quoting *Aura Lights US Inc. v. LTD Int'l LLC*, Nos. GLR-15-3198 & GLR-15-3200, 2017 WL 2506127, at *5 (D. Md. June 8, 2017)) (internal citation omitted); *see also Plush v. ServTech, Inc.*, No. CV RDB-21-2013, 2022 WL 4017329, at *2 (D. Md. Sept. 2, 2022) ("As this Court has repeadedly explained, an amendment is futile if it would not survive a motion to dismiss."); *Kribbeler v. Zen Enters. Corp.*, No. CV RDB-20-2008, 2022 WL 834127, at *2 (D. Md. Mar. 21, 2022) ("A proposed amendment is futile when it is clearly insufficient or frivolous on its face, or if the claim it presents would not survive a motion to dismiss.") (internal quotations omitted).

### III.   ANALYSIS

A. <u>Defendant's Motion to Dismiss</u>

i.   Plaintiff's ADA Claims

Although the Court may analyze the Motion to Amend prior to ruling on the Motion to Dismiss because ruling on the former could potentially impact the latter, the Court begins by analyzing the Motion to Dismiss for important jurisdictional purposes further explained below.  In its Motion to Dismiss, Defendant argues first that Plaintiff's ADA claims are barred by Eleventh Amendment immunity because Defendant is an arm of the State of Maryland.  (ECF No. 16-1 at 17); *see also Palya v. Dep't of Pub. Safety & Corr. Servs.*, No. CV PX-16-3669, 2018 WL 398288, at *2 (D. Md. Jan. 11, 2018) ("Under the Eleventh Amendment, states as well as their agencies and departments are immune from suits in federal court brought by their citizens or citizens of another state."); U.S. Const. amend XI.  This Court has previously held that Defendant is correct. *See, e.g., Fishback v. Maryland*, No. CIV.A. JFM-12-927, 2012 WL 1145034, at *2 (D. Md. Apr. 4, 2012), *aff'd*, 486 F. App'x 387 (4th Cir. 2012) (dismissing claims against the Circuit Court for Baltimore City and the Maryland Court of Special Appeals as being barred by the Eleventh Amendment); *Weigel v. Maryland*, 950 F. Supp. 2d 811, 831 (D. Md. 2013) (holding that the Maryland Court of Appeals, as a state judicial entity, is an arm of the State and therefore immune from suit under the Eleventh Amendment).  In fact, "Plaintiff concedes that his Claims under the ADA are barred by Eleventh Amendment Immunity" and the Court therefore dismisses Counts I–IV of Plaintiff's Complaint under the ADA.  (ECF No. 24-1 at 10).

ii.   Plaintiff's Title VII Claim

Defendant also argues that Plaintiff's Title VII claim should be dismissed because (1) it is time barred; or (2), if Plaintiff's Title VII claim is not time barred, that it fails to state a claim upon

which relief may be granted because there is no causal connection between any purported protected activity and Plaintiff's termination.  *See generally* (ECF No. 16-1).

"To assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies."  *Montgomery v. Crothall Healthcare, Inc.*, No. RDB-2—1154, 2021 WL 75136, at *3 (D. Md. Jan. 8, 2021).  To properly exhaust administrative remedies "In Maryland, a deferral state, a claim of discrimination under Title VII . . . must be filed with the EEOC within 300 days of the alleged discriminatory action."  *Trazell v. Del. Elevator, Inc.*, No. CV RDB-20-2265, 2020 WL 5982888, at *1 (D. Md. Oct. 8, 2020), *aff'd*, 837 F. App'x 248 (4th Cir. 2021).  The Supreme Court has previously summarized that

> In the event that the EEOC determines there is "n[o] reasonable cause to believe that the charge is true," the [EEOC] is to dismiss the charge and notify the complainant of his or her right to sue in court.  Whether or not the EEOC acts on the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the charge is filed.  *And within 90 days following such notice*, the complainant may commence a civil action against the allegedly offending employer.

*Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1847 (2019) (quoting and citing 42 U.S.C. §§ 2000e-f(b), f(1); 29 C.F.R. § 1601.28) (emphasis added).

Although Plaintiff's Complaint does not provide robust details regarding his interactions with the EEOC, Plaintiff filed two formal Charges of Discrimination with the EEOC.  The first of which was filed on October 7, 2019 ("first Charge"), in which Plaintiff alleged that Defendant retaliated and discriminated against Plaintiff based on his disability by refusing to grant Plaintiff's accommodation requests to not be assigned to criminal matters.  (ECF No. 16-16).[5]  The EEOC

---

[5] Specifically, Plaintiff alleged that he had "been discriminated against with respect to denial of reasonable accommodation and harassment, and retaliated against for engaging in protected activity with respect to harassment, in violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments of 2008."  (ECF No. 16-16).  The grounds for Plaintiff's allegation were that "Beginning in or around December 2017 and continuing through September 2019, [Defendant] has repeatedly denied my request to not be assigned to criminal courtrooms as a reasonable accommodation for my disability, of which [Defendant] is aware. Additionally, beginning in or around October 2018 and continuing through September 2019, [Defendant] has subjected me to harassment by unnecessarily assigning me to criminal courtrooms."  *Id.*

then issued Plaintiff a right to sue notice regarding his first Charge on July 19, 2021. (ECF No. 16-17 at 1). Plaintiff's lawsuit was not filed until July 11, 2023, roughly seven hundred and twenty-two (722) days later, and is thus untimely. Accordingly, the claims raised in Plaintiff's October 7, 2019, first Charge are time-barred. *See Xiao-Ying Yu v. Schrader*, No. CV JKB-17-3260, 2018 WL 3122458, at *4–5 (D. Md. June 26, 2018), *aff'd sub nom. Xiao-Ying Yu v. Neall*, 748 F. App'x 561 (4th Cir. 2019) ("Thus, if a plaintiff fails to file a claim within ninety days of receiving her right-to-sue letter (and there are not grounds for equitably tolling the clock), her claim will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.") (citing *Roberts v. Am. Neighborhood Mortg. Acceptance Co.*, No. JKB-17-0157, 2017 WL 3917011, at *3 (D. Md. Sept. 6, 2017)).

Plaintiff then filed a second Charge of Discrimination with the EEOC on February 10, 2020 ("second Charge"). (ECF No. 16-18). In the second Charge, Plaintiff alleged that he was "discriminated against due to [his] disability and retaliated against for engaging in a protected activity with respect to discharge, in violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008." *Id.* Plaintiff's second Charge detailed his dates of employment with Defendant, that he filed his first Charge in October 2019, that Plaintiff was discharged "for an incident that occurred on September 17, 2019," and that Defendant's "stated reason for the discharge was for violation of the Judiciary's Standards of Conduct." *Id.* Plaintiff's second Charge expressly contends that the single, discrete act of discrimination/retaliation for which Plaintiff seeks redress is his January 24, 2020, termination. *Id.* The EEOC then issued Plaintiff a right to sue notice regarding his second Charge on April 13, 2023. (ECF No. 16-19 at 1). Plaintiff thus exhausted his administrative remedies with respect to this second Charge given that his Complaint was filed roughly eighty-nine (89) days following

receipt of the second right to sue notice.  Accordingly, Plaintiff's Title VII claim is actionable only to the extent that Plaintiff asserts that his January 24, 2020, termination violated Title VII, *i.e.* Count V of Plaintiff's Complaint is predicated solely on his allegedly unlawful termination.  *See Snydor v. Fairfax County, Va.*, 681 F.3d 591, 593–94 (4th Cir. 2012) (noting that the scope of a plaintiff's right to file a federal lawsuit is determined by the contents of the corresponding EEOC charge); *Hejirika v. Md. Div. of Corr.*, 264 F. Supp. 2d 341, 346 (D. Md. 2003) ("The allegations contained in an EEOC administrative charge of discrimination generally limit the scope of any subsequent judicial complaint."); *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.").  At this juncture, Defendant's Motion to Dismiss is thus granted to the extent that Plaintiff's only actionable claim is under Count V, which is based solely on the assertion that Plaintiff's termination violated Title VII.

Defendant further argues that Plaintiff has failed to plausibly allege that his termination was unlawfully retaliatory in violation of Title VII.  Under Title VII—which makes it unlawful for an employer to discriminate against an employee because he opposed a practice prohibited by Title VII or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII—a *prima facie* case of retaliation "has three elements: the plaintiff must prove that he (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that a causal link between the protected activity and the adverse employment action exists."  *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, No. CV CCB-15-1451, 2017 WL 4280729, at *6 (D. Md. Sept.

27, 2017); *see also* 42 U.S.C. § 2000e-3(a).[6]  Where a plaintiff's claim of unlawful retaliation is

not premised on direct evidence, as is the case here, courts employ the three-step burden shifting

framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  And under the

*McDonnell Douglas* framework, "Once the plaintiff establishes a prima facie case of retaliation,

the burden shifts to the defendant to present a legitimate, non-discriminatory reason for the adverse

employment action.  If the defendant presents such a reason, the burden shifts back to plaintiff to

demonstrate that this reason is mere pretext."  *Hagee v. Bealefeld,* No. CIV.A. BPG-08-0570, 2009

WL 2913475, at *4 (D. Md. Sept. 2, 2009) (citing *McDonnell*, 411 U.S. at 802–04).

Defendant argues in particular that Plaintiff has failed to plead a plausible causal

connection between his engagement in protected activity and ultimate termination.  (ECF No. 16-

1 at 31–33).  Defendant is correct.  Judge Hollander of this Court has previously summarized the

avenues a plaintiff may take to demonstrate a causal connection in support of a Title VII retaliation

claim:

> A plaintiff may attempt to demonstrate that a protected activity caused an adverse
> action through two routes.  A plaintiff may establish the existence of facts that
> suggest that the adverse action occurred *because of* the protected activity.  Or, a
> plaintiff may demonstrate that the adverse act bears sufficient temporal proximity
> to the protected activity.  Notably, the existence of relevant facts alone, or together
> with temporal proximity, may be used to establish a causal connection between the
> protected activity and the adverse action . . . For the temporal route, there naturally
> must exist some degree of temporal proximity to suggest a causal connection.  But
> there is no bright-line rule for when temporal proximity helps or hurts a cause of
> action for retaliation.  However, temporal proximity may establish causation *only
> if it is very close*.  Therefore, a lengthy time lapse between the [defendant's]
> becoming aware of the protected activity and the alleged adverse . . . action often
> negates any inference that a causal connection exists between the two.  Notably, a
> lapse of time *as little as two months* between the protected activity and an adverse

---

[6] "At the motion to dismiss stage, a plaintiff need not establish a *prima facie* case or discrimination or retaliation under *McDonnell Douglas* but must satisfy the pleading standard established in *Iqbal* and *Twombly*.  Thus, while a plaintiff does not necessarily need to allege facts sufficient to establish all elements of a *prima facie* case of employment discrimination or retaliation to avoid dismissal under Rule 12(b)(6), sufficient facts must be pleaded to support a reasonable inference that an adverse employment action was motivated by unlawful discrimination or retaliation." *Harris v. Charles E. Smith Life Cmty.*, No. CV MJM-21-1242, 2022 WL 4777592, at *6 (D. Md. Oct. 3, 2022) (internal citations omitted).

> employment action is sufficiently long so as to weaken significantly the inference
> of causation.

*Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 745 (D. Md. 2023) (cleaned up) (emphasis

added); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) ("[T]he third

element of a *prima facie* case of retaliation . . . requires a showing that 'a causal relationship existed

between the protected activity and the adverse employment activity.' Stated differently, a plaintiff

must show that his employer 'took the adverse action *because* of the protected activity.'") (first

quoting *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 250, 253 (4th Cir. 2015), then quoting

*Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)) (emphasis in original);

*Univ. of Tex. Sw. Md. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("The text, structure, and history

of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must

establish that his or her protected activity was a *but-for* cause of the alleged adverse action by the

employer.") (emphasis added).

Plaintiff has not plausibly alleged a causal connection between any protected activities and

his subsequent termination within the scope of his second EEOC charge. First, Plaintiff has not

plausibly alleged that his termination occurred *because of* or *but for* his protected activity or

disability because there is an obvious alternative explanation. Plaintiff mentions in his Complaint

that Plaintiff "suffered a PTSD episode resulting in his removal from the courtroom" on September

17, 2019, but conveniently fails to leave out the details of that incident. (ECF No. 1 at 7).

Specifically, Plaintiff was making an obscene gesture at a criminal defendant during a live criminal

proceeding and repeatedly told that criminal defendant "You're a motherfucker. You're a

motherfucker. You're a motherfucker." (ECF No. 16-1 at 10–11). Plaintiff does not deny this

allegation or attempt to rebut it, and in fact references in his Opposition to the Motion to Dismiss

that Defendant's proffered reason for terminating Plaintiff's employment was because of his

"offensive conduct."  (ECF No. 24-1 at 17); *see also Kirby v. DeJoy*, No. 1:22-CV-02197-JMC, 2023 WL 6976069, at *8 (D. Md. Oct. 23, 2023) (finding no but for causation in Title VII retaliation case where there was "an obvious alternate explanation" for plaintiff's termination); *Barnhill v. Garland*, 636 F. Supp. 3d 592, 605 (E.D. Va. 2022) (holding that plaintiff's Title VII claim was "rendered implausible in light of an obvious alternative explanation" for the adverse employment action).  Even without the specifics of the September 17, 2019, incident, Plaintiff himself admits in his second Charge and suggests throughout his Complaint that Defendant's explanation for Plaintiff's discharge was for violating the court's code of conduct given his episode resulting in removal from the courtroom.  *See, e.g.*, (ECF No. 16-18).

Nor has Plaintiff presented a sufficient temporal connection to support a plausible inference of retaliation.  Plaintiff's second Charge contends that he was discriminated and retaliated against based on his October 7, 2019, first EEOC charge and September 17, 2019, incident, which occurred more than three and four months prior to Plaintiff's termination, respectively.  *See id.*; *see also, e.g., King v. Rumsfeld*, 328 F.3d 145, 152 n.5 (4th Cir. 2003) (affirming summary judgment against plaintiff on Title VII retaliation claim in part because the adverse employment action—plaintiff's termination—occurred "two months and two weeks" following defendant's notice of the EEOC complaint); *Gaines*, 657 F. Supp. 3d at 745 ("Notably, a lapse of as little as two months between the protected activity and an adverse employment action is sufficiently long so as to weaken significantly the inference of causation.") (internal citation omitted); *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 448 (D. Md. 2022) (noting same); *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (noting same); *Kline v. Certainteed Corp.*, 205 F. Supp. 2d 468, 474–75 (D. Md. 2002) (finding plaintiff established the causal element of a *prima facie* case where she had been terminated within two months of filing EEOC charges).  Accordingly, Plaintiff has not

pled a plausible cause of action for retaliation under Title VII and Count V of Plaintiff's Complaint is dismissed.

B. Plaintiff's Motion to Amend[7]

Having determined that Plaintiff's initial Complaint warrants dismissal under Rule 12(b)(6), the Court turns to Plaintiff's Motion to Amend. Plaintiff's First Amended Complaint "seeks to amend charges I through IV as causes brought under [Section 504 of] the Rehabilitation Act [of 1975 ("Rehabilitation Act")] and alleges three new counts based on Discrimination and Retaliation in violation of Maryland State Government Article §§ 20-601, 20-606, and 20-609." (ECF No. 26 at 1). Plaintiff also aims to "provide clarity and details to support the causes of action stated therein." *Id.* Defendant opposes Plaintiff's Motion to Amend initially on the grounds that any purported claims under the Rehabilitation Act are time-barred. Defendant is correct, and Plaintiff's attempt to amend claims I through IV is therefore futile.

Section 504 of the Rehabilitation Act provides that "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or

---

[7] As a preliminary matter, the Court wishes to make clear that Plaintiff is *not* entitled to file an amended complaint as a matter of right as Plaintiff suggests. Specifically, Plaintiff cites Rule 15(a) and *Galustian v. Peter*, 591 F.3d 724 (4th Cir. 2010), for the proposition that Plaintiff may file his Amended Complaint as a matter of right because Defendant filed a motion to dismiss, which is not a responsive pleading under Rule 15(a)(1)(B), instead of an answer. (ECF No. 24-1 at 19). Not only is *Galustian* based on previous law governing amendments, but Rule 15(a)(1)(B) directly contradicts Plaintiff's assertion. First, the Fourth Circuit has expressly cited *Galustian* negatively in recent years because "Since 2009, Rule 15 has provided that a party *may not amend as a matter of course more than 21 days after the filing of a motion to dismiss.*" *Davis v. Soc. Sec. Admin.*, 741 F. App'x 952, 953 (4th Cir. 2018) (emphasis added). Even the *Galustian* court itself noted in footnote 4 that its reasoning "corresponds only to the version of Rule 15(a) in effect" during "*March 2008*." *Galustian*, 591 F.3d at 730 n.4 (emphasis added). Defendant's motion to dismiss was filed on September 1, 2023, and Plaintiff's motion for leave to amend was filed on October 10, 2023. (ECF Nos. 16, 26). That is a gap of more than 21 days. Second, Rule 15(a)(1)(B) expressly provides that "A party may amend its pleading once as a matter of course no later than . . . (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading *or 21 days after service of a motion under Rule 12(b)* . . . whichever is earlier." Plaintiff was thus permitted to file an amended complaint as a matter of right within 21 days of service of Defendant's motion to dismiss, but Plaintiff did not.

under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). However, the Rehabilitation Act does not include a statute of limitations for claims brought thereunder. This prompted the Fourth Circuit Court of Appeals to address a growing split within this Court regarding the proper statute of limitations under the Rehabilitation Act in *Ott v. Maryland Department of Public Safety and Correctional Services*, 909 F.3d 655 (4th Cir. 2018). And in *Ott*, the Fourth Circuit opined that the Maryland Fair Employment Practices Act's ("MFEPA") two-year statute of limitations applies to claims of employment disability discrimination brought under the Rehabilitation Act because the MFEPA is the most analogous statute to the Rehabilitation Act. *Id.* at 659–60; *see also Davis v. Montgomery Cnty. Dep't of Transp.*, JFM-11-2637, 2012 WL 748392, at *5 (D. Md. Mar. 6, 2012) ("[I]t is long settled that where federal law does not supply [a statute of limitations], the court will borrow the statute of limitations for the analogous state cause of action."). Plaintiff asserts as much in arguing for leave to amend his Complaint. *See* (ECF No. 33 at 11–12).

Plaintiff's second EEOC charge asserted disability discrimination and retaliation based on Plaintiff's January 24, 2020, termination. (ECF No. 16-18). Thus, Plaintiff was required to file his lawsuit alleging the same under the Rehabilitation Act—in line with the MFEPA's statute of limitations—no later than January 24, 2022. Plaintiff's Complaint was not filed until July 11, 2023, though, well after the statute of limitations had run, even assuming *arguendo* that Maryland's general three-year statute of limitations applied to Plaintiff's claims. *See Ott*, 909 F.3d at 659 (noting "Maryland's general three-year statute of limitations governing civil actions"). Thus, Plaintiff's proposed claims under the Rehabilitation Act are time barred and leave to amend Counts I through IV of Plaintiff's Complaint to assert such claims would be futile.[8]

---

[8] Plaintiff spends much time arguing for the viability of his proposed Rehabilitation Act claims under the Rule 12(b)(6) standard, *see* (ECF No. 33 at 5–8), but Plaintiff's efforts are wasted given that his claims are time-barred.

Plaintiff nevertheless argues that the 2022 amendments to the MFEPA save Plaintiff's claims from being time-barred.  (ECF No. 33 at 12–16).  Those amendments are codified at Md. Code Ann., State Gov't § 20-1013(a)(2) and provide that the MFEPA's statute of limitations shall be tolled while an administrative charge or complaint filed within its scope is pending.  The entire provision reads:

### In general

(a)(1) In addition to the right to make an election under § 20-1007 of this subtitle, a complainant may bring a civil action against the respondent alleging an unlawful employment practice, if:

(i) the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent;

(ii) at least 180 days have elapsed since the filing of the administrative charge or complaint; and

(iii)

1. subject to item 2 of this item, the civil action is filed within 2 years after the alleged unlawful employment practice occurred; or

2. if the complaint is alleging harassment, the civil action is filed within 3 years after the alleged harassment occurred.

(2) The time limitations under paragraph (1)(iii) of this subsection shall be tolled while an administrative charge or complaint filed by the complainant under paragraph (1)(ii) is pending.

### Venue

(b) A civil action under this section shall be filed in the circuit court for the county where the alleged unlawful employment practice occurred.

### Termination of administrative proceedings

(c) The filing of a civil action under this section automatically terminates any proceeding before the Commission based on the underlying administrative complaint and any amendment to the complaint.

### Remedies

(d) If the court finds that an unlawful employment practice occurred, the court may provide the remedies specified in § 20-1009(b) of this subtitle.

**Punitive damages**

(e)(1) In addition to the relief authorized under subsection (d) of this section, the court may award punitive damages, if:

(i) the respondent is not a governmental unit or political subdivision; and

(ii) the court finds that the respondent has engaged in or is engaging in an unlawful employment practice with actual malice.

(2) If the court awards punitive damages, the sum of the amount of compensatory damages awarded to each complainant under subsection (d) of this section and the amount of punitive damages awarded under this subsection may not exceed the applicable limitation established under § 20-1009(b)(3) of this subtitle.

**Demand for jury trial**

(f) If a complainant seeks compensatory or punitive damages under this section:

(1) any party may demand a trial by jury; and

(2) the court may not inform the jury of the limitations on compensatory and punitive damages imposed under § 20-1009(b)(3) of this subtitle.

**Alternative dispute resolution**

(g) When appropriate and to the extent authorized under law, in a dispute arising under this part, in which the complainant seeks compensatory or punitive damages, the parties are encouraged to use alternative means of dispute resolution, including settlement negotiations or mediation.

Md. Code Ann., State Gov't § 20-1013.  It has long been a principle of Maryland law and statutory interpretation that "statutes are presumed to operate prospectively unless a contrary intent appears." *Allstate Ins. Co. v. Kim*, 376 Md. 276, 289 (2003).  Amendments are no exception to this general principle.  *See Johnson v. Mayor and City Council of Balt.*, 203 Md. App. 673, 698 (2012) ("The default presumption is that an amendment is forward-looking."); *Janda v. Gen. Motors Corp.*, 237 Md. 161, 168–69 (1964) ("An amendatory act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, *unless an intent to the contrary is expressed in the act or clearly implied from its provisions.*") (emphasis added).  Relatedly, Maryland courts have explained that

> [I]n ascertaining the legislative intent [of a statute], the words of the statute are (deemed to be) used in their ordinary and popular sense and if the face of the statute does not show some contradictory intention then we will look no further.  This Court has often stated that a statute should be construed according to the ordinary

and natural import of the language used, unless a different meaning is clearly
indicated by its context, without resorting to subtle or forced interpretations for the
purpose of extending or limiting its operation.

*Slate v. Zitomer*, 275 Md. 534, 539 (1975) (internal quotations and citations omitted).  The Fourth

Circuit has affirmed this principle of Maryland statutory interpretation.  *See Howard v. McCrory*

*Corp.*, 601 F.2d 133, 136 (4th Cir. 1979).

Looking at the plain language of the statute, there is no clear intention on the part of the

General Assembly to have this provision operate retroactively.  Perhaps the General Assembly

would have included language to that effect if it so intended, but it did not.  And although Plaintiff

includes various citations to the legislative sessions leading up to the amendment's passage in the

General Assembly, none of those materials cited by Plaintiff evidence a clear intent for the above

provisions to apply retroactively.  *See* (ECF No. 33 at 12–16).  Rather, the legislative history

presented by Plaintiff merely highlights that certain of the amendment's sponsors and supporters

recognized the benefit that this provision has on *pro se* plaintiffs in particular by allowing *pro se*

plaintiffs to rely on the administrative process to have their claims handled effectively.  *Id.*

Plaintiff ultimately argues that the legislative history evidences "a sense of urgency to address the

matter of statutory timeliness in discrimination complaints pending the administrative process,"

yet Plaintiff provides no authority, legislative history or otherwise, clearly indicating the General

Assembly's intent for the MFEPA amendment to apply retroactively, even if the individuals

supporting the amendment noted its positive practical effect.  *Id.* at 14.  Plaintiff's argument is

further undercut by the fact that the above MFEPA amendment was enacted May 29, 2022, and

took effect on October 1, 2022, more than eight (8) months after the statute of limitations for

Plaintiff's Rehabilitation Act claims would have run given that the last alleged incident giving rise

to Plaintiff's claims occurred on January 24, 2020.  *See id.* ("The Bill was enacted May 29, 2022,

20

and took effect October 1, 2022.").  In fact, the MFEPA amendment was not even introduced until January 27, 2022, three (3) days after the statute of limitations for Plaintiff's claims expired.  *See SB0451*,                 Md.                 Gen.                 Assembly, https://mgaleg.maryland.gov/mgawebsite/Legislation/Details/sb0451/?ys=2022rs   (last  visited December 14, 2023).  Accordingly, the Court cannot forcibly read into the MFEPA's—and subsequently the Rehabilitation Act's—statute of limitations a retroactive application such that Plaintiff's claims under the Rehabilitation Act are timely.

Having found that Plaintiff's ADA and Title VII retaliation claims warrant dismissal and that Plaintiff's proposed Rehabilitation Act claims are futile, the Court retains no subject matter jurisdiction over Plaintiff's proposed Maryland state law claims unless it finds that Plaintiff's proposed Title VII amendment is proper.  *See Heuer v. Forest Hill State Bank*, 728 F. Supp. 1197, 1198–99 (D. Md. 1989) (dismissing remaining state law claims for lack of subject matter jurisdiction where the Court dismissed all federal claims and no diversity jurisdiction existed);[9] *Arthur v. Trojan Horse, Ltd.*, No. CIV. WDQ-12-3156, 2013 WL 4854138, at *4–5 (D. Md. Sept. 10, 2013) (dismissing state claims after dismissing federal claims giving rise to federal question jurisdiction); *see also Dunn v. Balt. Cnty. Bd. of Educ.*, 83 F. Supp. 2d 611, 611 (D. Md. 2000) (remanding case in removal action for lack of subject matter jurisdiction because plaintiff's federal claims were dismissed).  The proposed amendments to Plaintiff's cause of action under Title VII do not remedy the above-described defects in Plaintiff's initial Complaint.  Plaintiff's purported additions describe primarily background information related to Plaintiff's Title VII claims such as

---

[9] To be clear, Plaintiff's sole basis for asserting jurisdiction in this Court is 28 U.S.C. § 1331, *i.e.* that there exists a federal question underlying this matter.  Plaintiff does not allege that diversity jurisdiction exists, nor can he given that Plaintiff is domiciled in and a resident of Maryland and Defendant is a government agency in Baltimore, Maryland.  *See* (ECF No. 1 at 2).

Defendant assigning Plaintiff to criminal proceedings, Defendant declining Plaintiff's requests to be assigned to civil proceedings, and Plaintiff's various internal complaints regarding the denial of those requests leading up to the September 17, 2019, incident.  *See* (ECF No. 26-1 at 14–16). But Plaintiff does not set forth amendments sufficient to support a plausible inference or allegation that Plaintiff's termination was because of or a but for cause of Plaintiff's first EEOC charge, internal complaints, or disability rather than his conduct giving rise to the September 17, 2019, incident.  Nor does Plaintiff plead a sufficiently brief temporal relationship between his protected activities and termination.  Accordingly, Plaintiff's proposed amendments to his Count V claim for retaliation under Title VII are futile, necessitating that the entirety of Plaintiff's case be dismissed because he asserts no plausible cause of action under any federal law and cannot satisfy the requirements of diversity jurisdiction.  *See* 28 U.S.C. § 1332.  Even if Plaintiff's Title VII retaliation amendments were not futile, though, Plaintiff's causes of action under the MFEPA would be time-barred for the same reasons as his Rehabilitation Act claims given that both operate under the same statute of limitations for the reasons explained *supra*.

**IV.    CONCLUSION**

For the foregoing reasons, it is this <u>14th</u> day of <u>December, 2023,</u> hereby **ORDERED** that

1.  Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

    (ECF No. 16), construed as a motion to dismiss under Rule 12(b)(6), is hereby

    **GRANTED**;

2.  Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint (ECF No. 26)

    is hereby **DENIED**; and

3.  The Clerk of the Court is politely asked to close the case.

Date: <u>December 14, 2023</u>                          _____/s/_____

                                                    J. Mark Coulson
                                                    United States Magistrate Judge